**Hugh Locke RUSSELL, Plaintiff,**

v.

**SHELL OIL COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 4–70690.**

United States District Court,
E. D. Michigan, S. D.

May 3, 1974.

James D. Wines, Royal Oak, Mich., for plaintiff.

Clarence J. Boldt, Jr., Birmingham, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

PHILIP PRATT, District Judge.

This matter came on to be heard on the motion of defendant Shell Oil Com-

pany for summary judgment or, alternatively, for dissolution of the preliminary injunction currently in effect. Counsel have presented briefs and oral arguments in support of their respective positions.

The record in this case indicates that, after removal of the action from state court, defendant filed a motion for summary judgment. The Court entered a Memorandum Opinion and Order thereon granting that motion on February 7, 1974. A judgment of dismissal, however, was not entered and plaintiff was given 30 days to engage in discovery and amend his complaint, which the Court had found to be inadequate to state a claim. The Court subsequently granted plaintiff an additional ten days within which to file his amended complaint. On March 14, 1974 plaintiff did file an amended complaint. Thereafter, the instant motion was filed by defendant.

Although the facts were set out in detail in the opinion entered on defendant's previous summary judgment motion, for the sake of clarity the salient facts surrounding this action will be briefly reviewed.

Plaintiff, a Shell gasoline station operator for a period of years, brought this suit in state court after being given notice by defendant that his Dealer's Agreement and Dealer's Lease would not be renewed when they expired on November 30, 1973.[1] Plaintiff sought an injunction enjoining termination of the Dealer's Agreement and Dealer's Lease to enable him to continue in business at his present location at Dequindre and Nine Mile Road in Warren, Michigan. Plaintiff alternatively demands damages which allegedly would result from termination of his dealer agreements and eviction from his station. On November 19, 1973, after hearing, the Macomb County Circuit Court issued a preliminary injunction, which, in effect, maintained the status quo pending a determination of the case on the merits at trial. Shell then removed the case to this Court under 28 U.S.C. § 1441(a). The preliminary injunction granted by the state court presently remains in full force and effect. 28 U.S.C. § 1450.

As indicated in the earlier memorandum opinion, plaintiff based his claim in the original complaint on the assertion that the dealer agreements between the parties required Shell to show "good cause" for refusing to renew its relationship with plaintiff. Two primary theories were advanced to support this claim, ambiguity of contracts and past practices by Shell.[2] After first concluding that the terms of each contract were unambiguous, the Court then found plaintiff's allegations in the original complaint relating to defendant's past business practices insufficient to state a claim.

The amended complaint now before the Court is drafted in two counts. In Count I plaintiff has incorporated by reference the allegations of the original complaint and has supplemented it by the addition of three paragraphs. In the supplemental portion, plaintiff claims that Shell ". . . as a normal business practice allows . . ." dealers to renew leases unless there is cause for Shell not to renew and that Shell must be able to show good cause in order not to renew. Plaintiff then further alleges that:

". . . it is unconscionable for the defendant to arbitrarily, capriciously and without cause change its normal business practices in this instant cause merely because of the present District Manager and its other agents to deviate from its normal business practices upon which the plaintiff relied when the Dealer Lease and Agree-

1. The stated term of each of these contracts was from December 1, 1970 to November 30, 1973.

2. At the oral hearing on defendant's initial summary judgment motion the Court obtained a clarification on plaintiff's theories from counsel after expressing its difficulty in grasping plaintiff's theories of recovery as stated in the original complaint.

ment were signed by the plaintiff re-October 5, 1970, due to his previous dealings and relationships with the Defendant and other Dealers in the Detroit North District of the Defendant."

Thus the gist of plaintiff's claim in this count is that defendant arbitrarily changed its normal business practice, which required a showing of good cause before a dealer would be terminated, to plaintiff's detriment. Plaintiff also asserts that he relied upon these past business practices. The effect of this theory is that plaintiff seeks to have the Court imply a condition into the dealer agreements that Shell must show "good cause" in order not to renew the agreements. Plaintiff does not, however, claim any fraud, misrepresentation or mistake.[3]

In Count II of the amended complaint, plaintiff presents an entirely new claim alleging that defendant's failure to renew his dealer agreements is in violation of Federal Energy Office regulations. He specifically relies upon Sections 210.-61 and 210.62 of the Petroleum Allocation and Price Regulations issued on January 14, 1974 (10 C.F.R. §§ 210.61 & 210.62, 39 F.R. 1923, 1931).[4]

In addition to the two counts in plaintiff's amended complaint, also before the Court is a counterclaim filed by defendant. Alleging that it owns the station property located at 23008 Dequindre and Nine Mile Road in Warren, Michigan, and that the lease of that property to plaintiff expired on November 30, 1973,

defendant in its counterclaim seeks an order requiring plaintiff to surrender the premises.

Turning now to the merits of the summary judgment motion, the Court must determine whether there exists any genuine issues of material fact and whether the movant is entitled to judgment as a matter of law. Rule 56(c). Before the Court are the affidavits of Messrs. Risk and Smith filed by defendant in support of its motion and the depositions of Messrs. Lawler, Risk, Shields, Heiden and Smith, all employees of Shell.

■ With respect to the state law claims asserted in Count I of the amended complaint, the principal issue is whether Michigan recognizes any doctrine which would operate to defeat the clear and unambiguous language of the agreements entered by the parties. As noted above, plaintiff relies on the past business practices of defendant to establish a right to automatic renewal, unless Shell can establish "good cause" not to renew. The affidavit of defendant's Territory Manager, Thomas Risk, clearly states that renewal of dealerships has been and is governed by a determination "whether Shell's interests would best be served by the renewal of the engagement." Certainly such a policy would not permit implication of a "cause" term into the agreements between the parties. Moreover, the prior contracts since 1965 are before the Court, attached to the affidavit of J. Carl Smith, and these documents provide no support for plaintiff's

---

3. The intentions of plaintiff concerning use of the term "unconscionable" in paragraph 19 of the amended complaint are unclear. Apparently plaintiff contends that defendant's alleged change in business policies resulting from personal animosity to plaintiff by defendant's agents constitutes the unconscionable conduct. At oral argument, plaintiff's counsel, upon inquiry from the Court disclaimed any reliance upon public policy as establishing a claim on which this Court could grant plaintiff relief. Moreover, the Court believes it unlikely that Michigan would judicially adopt a doctrine such as that established in New Jersey in the ab-

sence of a specific statute. Cf. Shell Oil Company v. Marinello, 63 N.J. 402, 307 A.2d 598 (1973), cert. den. 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475.

4. Section 210.61 prohibits retaliatory actions against a firm (or an individual) for assertion of rights established by energy regulations. Section 210.62 requires petroleum suppliers to deal with purchasers according to their "normal business practices" to preclude modification of business practices which might result in circumvention of energy regulations.

contention. Moreover, the depositions of defendant's agents in no way detract from the statement of Shell's past policies and, in fact, they clearly support defendant's position.

■ Even assuming that Count I states a claim, plaintiff has not produced any evidence, by affidavit or otherwise, to create a dispute as to the alleged business practices of defendant, as to plaintiff's knowledge of such practices, or as to his reliance thereon. Clearly, the past practices as related by affiant Risk cannot establish any rights inuring to plaintiff's benefit.[5] It is significant, for example, that no affidavits of other dealers or former dealers have been produced. Accordingly, the Court holds that there is no genuine issue of material fact in dispute on the claim asserted in Count I and therefore that defendant is entitled to judgment thereon as a matter of law.

■ As to Count II, the Court fails to find any application of the Mandatory Petroleum Allocation and Price Regulations. Since the notice that Shell would not renew the agreements was issued on October 16, 1973, prior to enactment of the Emergency Petroleum Allocation Act of 1973 on November 27, 1973, and before promulgation of the mandatory allocation regulations on January 14, 1974, there clearly could have been no retaliatory purpose in defendant's action in violation of Section 210.61.

■ Likewise, for the same reason, there necessarily could not have been any change in normal business practices by defendant for the purpose of circumventing any provisions of the Act or regulations in violation of Section 210.-62. And for the reasons expressed above in discussion of the claim in Count I, plaintiff has not submitted evidence establishing disputed issues of material fact with respect to any deviation from defendant's normal business practices. Finally, the fact that the lease and dealer agreement between the parties here expired by their own terms would appear to be within the contemplation of Section 211.24(d) which permits suppliers and purchasers to terminate their relationship by mutual agreement.[6] In view of the foregoing, defendant is thereby entitled to summary judgment on Count II.

■ The defendant similarly must prevail on its counterclaim for an order directing plaintiff to surrender possession of the leasehold premises. The lease having expired and plaintiff having no valid defenses to defendant's claim of possession, defendant is thus entitled to summary judgment on its counterclaim.

Therefore, defendant's motion for summary judgment is granted and the preliminary injunction is dissolved. Plaintiff's Amended Complaint is dismissed and the relief demanded in defendant's counterclaim [Cross-Complaint] is granted. In order to provide for an orderly transition, the Court will stay execution of the order directing plaintiff to surrender the leasehold premises until June 2, 1974.

It is so ordered.

---

5. The doctrine of unconscionability has no application to this case. Although the record is unclear as to the relative bargaining power of the parties, the Dealer's Agreement and Dealer's Lease cannot be held to be substantially unreasonable. In addition, plaintiff does not claim that the agreements themselves were unconscionable, but merely that in this case it would be unconscionable for defendant to change its alleged normal business practices.

6. This conclusion is supported by the statement in the determination letter from the Federal Energy Office (plaintiff's exhibit 1) which explicitly recognizes expiration of the lease and emphasizes that "the agency does not attempt to interfere nor interpret the rights and remedies under dealer agreements and leases."