Joel B. RICHMOND, Plaintiff,

v.

AMOCO PRODUCTION COMPANY, Defendant and Third-Party Plaintiff,

v.

DRESSER ENGINEERING COMPANY OF OKLAHOMA, Third-Party Defendant.

No. TY–73–CA–75.

United States District Court,
E. D. Texas,
Tyler Division.

March 4, 1975.

Rex Houston, Henderson, Tex., for plaintiff.

Herbert Boyland, Longview, Tex., for defendant and third-party plaintiff, Amoco Production Co.

Royal H. Brin, Jr., Dallas, Tex., for third-party defendant, Dresser Engineering Co. of Okl.

## MEMORANDUM OPINION

STEGER, District Judge.

This is a third-party action for contractual indemnity brought by Amoco Production Company against Dresser Engineering Company of Oklahoma. Amoco seeks to recover $71,275.20 which it paid in settlement of the claim of the plaintiff, Joel B. Richmond, plus attorneys' fees, court costs and expenses in the amount of $7,448.79 that were incurred in defending the plaintiff's lawsuit. Jurisdiction is based on diversity of citizenship with more than $10,000.00 in controversy.

The parties have stipulated that the settlement with Joel B. Richmond was reasonable and made in good faith and the attorneys' fees and expenses were reasonable and necessary. Further, it is agreed that the injuries to Joel B. Richmond were proximately caused by the negligence of Amoco. Finally both parties have stipulated that the provisions of the contract are to be interpreted and governed by the law of Texas. The case was tried to the Court without the intervention of a jury on September 9, 1974, and the following will constitute the Court's findings of fact and conclusions of law for the purposes of Rule 52, Federal Rules of Civil Procedure.

On October 15, 1971, Amoco and Dresser entered into a contract which contemplated that Dresser would design and construct a new facility at Amoco's Elk Basin plant in Park County, Wyoming. After this construction was completed in late July, 1972, production was halted by Amoco at the Wyoming facility to allow Dresser to "tie-in" the new facilities with the existing plant. After the completion of the "tie-in" Dresser turned the plant over to Amoco and the plant's reactors, which produced hydrogen sulfide, were started up.

Two days later, early in the morning of August 2, 1972, Bernard Schacht, an Amoco shift foreman detected gas leaking from a flange or valve that Dresser had previously installed. Upon detecting the leak, he immediately shut down the reactor. However, he testified that it would then taken some four to five hours for the reactor to cool down and cease driving gas into the line.

Thereafter, the Amoco crew attempted to stop the leak by tightening the flange bolts but when this failed, they notified Dresser. Dresser sent one of its employees, Joel B. Richmond, to try to solve the problem. Dresser did not furnish Mr. Richmond with a gas mask or gas detection equipment even though they were aware that there was a leak in the line and there had been gas in the area. Harold Martin, Dresser's construction superintendent on the job, testified that he felt the line was purged and ready to work on when he sent Mr. Richmond, because Amoco had not specified any special precautions to be taken. As it turned out, there was still gas in the line, and when the plaintiff parted the flange, he was overcome and fell some fifteen feet off the platform upon which he was working and sustained serious injuries.

Dresser, who supplied the valve in question and constructed the new facility, had the sole responsibility to correct any defects in their construction. This is precisely what Mr. Richmond was attempting to accomplish at the time of his injury. Mr. Martin confirmed that it was a defect in Dresser's installation which caused the leak to occur.

The Court is of the opinion that under the contract in question and the prevailing law in Texas that it is not necessary to determine whether Dresser was concurrently negligent with Amoco, or whether Amoco was solely at fault. The question for this Court's determination is whether the contract between the parties clearly manifests an intention for Amoco to be indemnified for its own acts of negligence.

The relevant portions of the contract are set forth below:

"21. *Contractor [Dresser] shall be liable for any and all claims arising from injuries to employees of Contractor, or to any subcontractor, or to em-*

*ployees of any subcontractor, incident to, or arising out of, the performance of this contract.* Contractor shall be further liable for any injuries to employees of Operator [Amoco] or to third persons, or to the public or to the property of such persons proximately caused by or arising out of the negligence of the Contractor, its employees or subcontractors or their employees in connection with the performance of this contract." (emphasis supplied)

"23. Contractor hereby indemnifies Operator and CIG and agrees to hold Operator and CIG harmless from any and all liens, losses, claims, damages and causes of action of every nature or character except loss of income which may arise out of or may be claimed to have arisen out of or in connection with the performance of this contract. Contractor shall not be liable for any losses covered by all-risk installation floater insurance provided for in paragraph 26 hereof."

Additionally, Dresser agreed to provide for its protection and that of Amoco general liability coverage on its own employees and those of Amoco.

There have been numerous cases decided by Texas Courts in recent years which have construed contractual indemnity provisions. The latest exposition on the subject by the Texas Supreme Court is Fireman's Fund Ins. Co. v. Commercial Stand. Ins. Co., 490 S.W.2d 818 (Tex.1972). In *Fireman's Fund* the Court began its discussion by emphasizing that the contract of indemnity must be stated in clear and unequivocal terms in order to give protection to the indemnitee for its own acts of negligence. Further, the Supreme Court stated that Texas has moved "as near as is judicial-

ly possible" to the "express negligence" rule without formally adopting it, and that broad general statements will not afford protection to the indemnitee. The Court then outlined the three exceptions to this rule which are presently recognized in Texas:

". . . (1) agreements in which one person clearly undertakes to indemnify another against liability for injuries or damages caused by defects in certain premises or resulting from the maintenance or operation of a specified instrumentality as in Mitchell's, Inc. v. Friedman, *supra* [157 Tex. 424, 303 S.W.2d 775], and Houston & T. C. R. Co. v. Diamond Press Brick Co., 111 Tex. 18, 222 S.W. 204, 226 S.W. 140 (1920); (2) agreements which fall within the peculiar circumstances of the indemnitor having complete supervision over the property and employees of the indemnitee in connection with the performance of the indemnitor's contract, as in Spence & Howe, *supra*; and (3) contracts in which there is an unequivocal provision that indemnitor will protect and indemnify the indemnitee from any and all liability by reason of injuries to indemnitor's employees as in Ohio Oil, *supra*." 490 S.W.2d at 822.

Because the contract in question does not satisfy the "express negligence" rule as envisioned by the Texas Supreme Court, Amoco must fit within one of the three exceptions. Amoco contends that they fit squarely within the *Ohio Oil* [1] exception outlined above. Dresser disagrees with this contention and claims that under *Fireman's Fund* and other cases interpreting Texas law [2] the contract is just not clear enough to protect

---

1. Ohio Oil Company v. Smith, 365 S.W.2d 621 (Tex.1963).

2. Kelley v. General Telephone Company of the Southwest, 485 F.2d 1315 (5th Cir. 1973); Gantt v. Mobil Chemical Company, 463 F.2d 691 (5th Cir. 1972); Sira & Payne, Inc. v. Wallace & Riddle, 484 S.W.2d

559 (Tex.1972); Joe Adams & Son v. McCann Construction Company, 475 S.W.2d 721 (Tex.1971); Brown & Root, Inc. v. Service Painting Company of Beaumont, 437 S.W.2d 630 (Tex.Civ.App.—Beaumont 1969, writ ref'd); Westinghouse Electric Corp. v. Childs-Bellows, 352 S.W.2d 806 (Tex.Civ. App.—Ft. Worth 1961, writ ref'd).

Amoco against its own acts of negligence.

The question presented herein is simple. If the indemnity contract comes within the *Ohio Oil* exception, then Amoco is entitled to indemnity. Otherwise they are not. Set forth below are the indemnity provisions which the Texas Supreme Court felt were sufficient to allow the indemnitee, Ohio Oil Company, to be indemnified for its own acts of negligence:

" '15. *Ohio Indemnified:*

" 'Ohio shall not be liable or responsible for and Contractor shall save and hold harmless Ohio from and against *any and all claims and damages of every kind, for injury to or death of any person* or persons and for damage to or loss of property, *arising out of or attributed, directly or indirectly, to the operations of Contractor hereunder.* Contractor shall likewise indemnify Ohio for any or all injury or damage to property belonging to Ohio, arising out of or in connection with or resulting from any and all acts or omissions of Contractor hereunder. (emphasis added)' "

" '17. *Statutes To Be Complied With:*

" '(a) Contractor agrees to comply with the Workmen's Compensation Act of the State of New Mexico and to pay or cause to be paid all compensation, medical or hospital bills which may become due or payable thereunder, and to protect *and indemnify Ohio from and against any and all liability by reason of injury of employees of Contractor.* Contractor shall furnish Ohio with a certificate from the State Agency charged with the administration of the Workmen's Compensation Act evidencing Contractor's compliance therewith.' (Emphasis added.)" 365 S.W.2d at 623.

The important language in *Ohio Oil* appears in paragraph seventeen, where the indemnitor agreed to indemnify Ohio from any and all injuries to the indemnitor's employees. It is clear that the general language in paragraph fifteen above, standing alone, would be insufficient to allow indemnity. Likewise, the general indemnity language found in paragraph twenty-three of the contract between Amoco and Dresser, without more, would be inadequate to protect Amoco for its own negligence.

■■ However, the Court is of the opinion that when paragraph twenty-one of the instant contract is read in conjunction with paragraph twenty-three and all the surrounding circumstances are considered, the intention of the parties becomes clear. Their intention was that Dresser would assume liability for any and all injuries to their own employees, whether caused by their concurrent negligence or solely caused by Amoco. This conclusion is reinforced by examining the second sentence in paragraph twenty-one. While the first sentence of that paragraph shows that Dresser is liable for all injuries to their employees, the second sentence limits their liability for injuries to Amoco's employees and third persons (excepting subcontractors and their employees) to situations where they were negligent themselves. Although not found in the provisions of *Ohio Oil*, the inclusion of subcontractors and their employees in the first sentence of paragraph twenty-one should not preclude indemnity in this case. This contract involved new construction and it was Dresser's responsibility to furnish the materials, equipment and labor necessary to complete the project. This included hiring of subcontractors.

The difference between the indemnity contract herein and the indemnity provisions in the cases relied upon by Dresser is the specific language used. For example, in *Fireman's Fund*, the indemnitor agreed to protect the indemnitee, "against all liabilities, claims or demands for injuries or damages to any person . . . growing out of the performance of the work under this specification." Further, paragraph 20

of their contract provided that all contractors, ". . . shall specifically and distinctly assume and do so assume all risks of damage or injury from any cause *except negligence of Owner,* . . ." The Supreme Court concluded that taking all the provisions together, they could not find any clear and convincing language showing that the parties intended for the indemnitee to be indemnified for its own acts of negligence. 490 S.W.2d at 823. A similar conclusion was reached by the Texas Supreme Court in Joe Adams & Son v. McCann Construction Company, *supra* where the language was of a general nature as opposed to the specific language found in the contract between Dresser and Amoco. See also Gantt v. Mobil Chemical Company, *supra.*

The final question to be resolved is whether Mr. Richmond's injury arose out of and was incident to the work Dresser had undertaken to perform under the contract. The Court feels that the case of Alamo Lumber Company v. Warren Petroleum Corporation, 316 F.2d 287 (5th Cir. 1963), is very instructive in passing upon this question. In the *Alamo Lumber* case the indemnitor (Alamo Lumber) agreed to construct cabinets for the indemnitee (Warren Petroleum) at Warren's plant in Fashing, Texas. During the performance of the work, it was necessary for the indemnitor's employees to disconnect the sewage drainage pipe. Waste gas backed up in the sewage pipe and it was discharged into the room where Alamo's employees were working, causing the men to be overcome by the poisonous gas. The Fifth Circuit upheld the action of the trial court in granting indemnity to Warren Petroleum and agreed that the employees' injuries arose out of performance of the contract. The Court stated: ". . . Alamo had contracted to install cabinets, and when the two men were overcome by gas they were admittedly installing the cabinets near the

uncapped pipe. Since the only requirement for indemnity is that the employee's injury have some connection with Alamo's work, Warren is entitled to recovery over against Alamo." 316 F.2d at 290.

■ The factual situation before this Court is remarkably similar to that found in *Alamo Lumber.* Here, the plaintiff was performing work under the contract at the time of his injury. The leak in the line was caused by the defective work done by Dresser a few days earlier, and Dresser had the obligation under the contract to correct any defects in their construction. Had Dresser done their work properly, Mr. Richmond would not have been injured. The facts of this case distinguish it from those cases [3] relied on by Dresser, and therefore, this Court finds that Joel B. Richmond's injuries arose out of, and were sustained in connection with the work Dresser was obligated to perform under the contract.

### CONCLUSION

■ In summary, the Court is of the opinion that when all the contract provisions are considered, it is clear that the parties intended that Dresser would assume the liability for any and all injuries to their own employees whether the injuries were due to the sole negligence of Amoco or the concurrent negligence of Amoco and Dresser. Further, the plaintiff's injuries arose out of and were sustained in connection with the work Dresser agreed to perform under the contract. Therefore, Amoco is entitled to be indemnified for the amount paid in settlement of the plaintiff's claim. Additionally, Amoco is entitled to be indemnified by Dresser for the court costs, attorneys' fees and expenses in the amount of $7,448.79. See Ohio Oil Company v. Smith, supra 365 S.W.2d at 627–628.

Judgment will be entered in accordance with the findings made herein.

3. Brown & Root, Inc. v. Service Painting Company of Beaumont, *supra*; Westing-house Electric Corp. v. Childs-Bellows, *supra.*