**SUN OIL COMPANY (DELAWARE),**
Appellant,

v.

**RENSHAW WELL SERVICE,**
**INC.,** Appellee.

**No. 1163.**

Court of Civil Appeals of Texas,
Tyler.

Aug. 31, 1978.

Rehearing Denied Sept. 21, 1978.

Eugene W. Brees, Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

John M. Smith, Roberts, Harbour, Smith, Harris, French & Ritter, Longview, for appellee.

DUNAGAN, Chief Justice.

This is a third-party action for indemnity brought by Sun Oil Company (Delaware), appellant, hereafter referred to as "Sun,"

against Renshaw Well Service, Inc., appellee, hereafter referred to as "Renshaw." Sun seeks to recover $10,000.00 which it paid in settlement of the claim of plaintiff, David Durbin, plus attorneys' fees and court costs. The third-party indemnity action was submitted to the trial court solely on stipulations of fact. This appeal follows the rendition of a take nothing judgment against Sun, which denied indemnity under the provisions of the contract between appellant and appellee.

Sun was the operator of the Shamburger Lake Unit (Paluxy) Field, Smith County, Texas, pursuant to a unit agreement entered into by its predecessor in interest, dated August 17, 1962. In April, 1972, Sun and Renshaw entered into a contract by which appellee was to perform certain well servicing and other work on wells located within the Shamburger Lake Unit. The contract contained a provision granting Sun a right to indemnity from Renshaw, as follows:

"INDEMNITY: Contractor [Renshaw] agrees to protect, defend, indemnify and hold Sun and the employees of Sun free and harmless from and against any and all claims, demands and causes of action of every kind and character (except underground damage) arising out of, incident to, or in connection with this agreement or performance of work or services hereunder or breach of the terms hereof, regardless of whether the liability therefor is based upon some alleged act or omission of Sun or of Contractor or of some third or other party, and including without limitation by enumeration all taxes, claims, debts, fines, penalties, forfeitures, patent infringements, loss of use, death, injury and damages to all persons and property, together with the amount of judgments, penalties, interest, court costs, legal and other fees and expenses in connection therewith. With respect to liability based upon some alleged act or omission of Sun or some such third or other party, not an agent or subcontractor of Contractor, this indemnity shall be limited to the kinds and amounts of insurance Contractor agrees to carry un-

der this Contract and Services Agreement, or such greater amounts as Contractor does in fact carry."

The contract and accompanying rate schedule provided that there would be a charge for the work performed by Renshaw, plus an additional charge for road time. Under terms of the contract, Sun had no authority to direct, supervise or control Renshaw in the manner or method of performance of the work thereunder. On the date of the accident giving rise to plaintiff's suit herein, the contract and rate schedule were in full force and effect and covered the well servicing work which had been performed by Renshaw.

On June 19, 1973, appellee performed certain well servicing operations at the well known as M.S. Shamburger Well 2–1, which included fishing out a broken sucker rod, replacing worn rods and replacing the entire string of sucker rods back into the hole. The specific work which Renshaw had contracted to perform at M.S. Shamburger Well 2–1 was completed, to the satisfaction of appellant, and no further work remained to be done at that well site. Renshaw's employees were in the process of returning to appellee's headquarters to park the equipment when the accident occurred. Plaintiff, a Renshaw employee named David Durbin, was driving a well service truck on the dirt access road leading away from the well site. Approximately 585 yards away from M.S. Shamburger Well 2–1, plaintiff drove off the road while attempting to cross an earthen dam. The accident occurred within the Shamburger Lake Unit and it is undisputed that Sun was responsible for maintenance of the access road. At the time in question, this was the only access road that Sun provided for Renshaw's equipment to go to and from this particular well site. On the occasion in question, no Sun employee was present at either the well site or on any portion of the access road.

David Durbin received benefits of over $17,000 from the Workmen's Compensation carrier for Renshaw and thereafter, Durbin brought suit against Sun, alleging negli-

gence in the maintenance of the access road. Subsequently, Sun filed a third-party action against Renshaw based on the indemnity agreement. Sun settled Durbin's negligence claim for $10,000, plus costs, while continuing to assert its third-party action against appellee. It was stipulated that the settlement was made in good faith and was fair and reasonable, and there is no dispute as to the propriety or amount thereof.

In support of its take nothing judgment against Sun, the trial court made the following conclusions of law:

### "1.

The third-party Plaintiff, SUN OIL is not entitled to indemnity from the third-party Defendant RENSHAW, because of monies it paid to DAVID DURBIN.

### 2.

The injuries received by DAVID DURBIN did not arise out of nor incident to, nor in connection with the agreement by RENSHAW to perform services for SUN OIL or in performance of work or services by RENSHAW for SUN OIL.

### 3.

DAVID DURBIN's injury did not grow out of any work undertaken by RENSHAW for SUN OIL, but on the other hand grew out of the overturning of the truck that DAVID DURBIN was driving on a road owned by SUN OIL and for which SUN OIL was responsible for its maintenance.

### 4.

SUN OIL and RENSHAW did not intend by the indemnity agreement given by RENSHAW to protect, defend, indemnify, and hold SUN OIL harmless against any and all liability and damages resulting from injury to RENSHAW's employees regardless of how it arose or whose act allegedly caused it."

Appellant predicates its appeal upon two points of error which complain that the trial court erred (1) in concluding that Sun and Renshaw did not intend the indemnity agreement to protect Sun against the consequences of its own negligence and (2) in refusing to apply the indemnity agreement to the facts of this case. Appellee first responds that appellant is procedurally barred from invoking the indemnity agreement against appellee because appellant has failed to prove facts rendering it liable to plaintiff. Since this issue was not addressed in its original brief, a reply brief was filed by appellant which contends that no judicial determination of Sun's liability to plaintiff was necessary where (1) the indemnitor was notified of the claim, (2) the indemnitor denied any liability thereunder, and (3) subsequently a good faith, reasonable and prudent settlement of the claim was made by the indemnitee.

An indemnitor waives the right to insist upon a judicial determination of the indemnitee's liability by denying any obligation under the indemnity agreement. The indemnitor may not, however, be held liable for a purely voluntary payment by the indemnitee. *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775, 779 (Tex.Sup.1957). The Supreme Court of Texas, in addressing the point raised here by appellee, has said:

"As to the status of the indemnitee in a case wherein a settlement was made with the injured party, *after denial of liability on the part of the indemnitor,* we said: [quoting *Mitchell's, Inc. v. Friedman,* supra.]

'. . . Having settled the claim without obtaining a judicial determination of its liability, petitioner [indemnitee] assumed the risk of being able to prove the facts which *might* have rendered it liable to the plaintiff as well as the reasonableness of the amount which it paid. It will be necessary, therefore, for petitioner to establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances.'

*Gulf, Colorado & Santa Fe Railway Company v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 495 (Tex.Sup.1958).

■ In the instant case, however, appellee lacks the proper predicate to present this complaint on appeal. The court below was never afforded an opportunity to rule on this question and no motion for new trial was filed by either party. Rule 324, T.R.C.P., clearly states that " . . . it shall be necessary to file a motion for new trial in order to present a complaint which has not otherwise been ruled upon." Having raised this issue for the first time in its appellate brief, appellee has failed to properly preserve this point and we will not consider it.

■ The substance of appellant's first point of error asserts that the indemnity agreement between Sun and Renshaw clearly indicates an intention to protect Sun against the consequences of its own negligence. It is a well-settled rule in Texas that in order for an indemnitee to be shielded against the consequences of his own negligence, it is necessary that the obligation be expressed in unequivocal terms. *Fireman's Fund Insurance Company v. Commercial Standard Insurance Company,* 490 S.W.2d 818, 822 (Tex.1972); *Joe Adams & Son v. McCann Construction Company,* 475 S.W.2d 721, 723 (Tex.1971); *Spence & Howe Construction Company v. Gulf Oil Corporation,* 365 S.W.2d 631, 633 (Tex.1963). It is a matter of defining, in terms of physical or legal responsibility, the cause of the injury or damage for which indemnity is promised. It is unnecessary for us to address this question in order to dispose of this case. Therefore we will assume, without deciding, that (1) the indemnity agreement was intended to indemnify Sun against damages or injuries resulting from its own negligence and (2) Sun was liable to David Durbin for negligent maintenance of the access road.

The issue remaining is raised by appellant in its second point of error; whether the indemnity provision entered into by Sun and Renshaw is applicable to the facts in this case. The key terms of the indemnity agreement which are controlling are, " . . . all claims . . . arising out of, incident to, or in connection with this agreement or performance of work or services hereunder . . . ." Such terms are employed to define the scope of the area within which the indemnity provision is applicable.

■ Appellant contends that such language should be given a broad interpretation and allowed to provide Sun with expansive protection. A question relating to the construction of the indemnity provision is presented. The rules relating to the construction of contracts in general are applicable to indemnity contracts.

"In construing contracts we must seek the intention of the parties from the language used in the contract. All of the language used is to be considered. Too, consideration may be given to the subject matter of the contract and the surrounding facts and circumstances, not for the purpose of varying or adding to the contract but in order to find out the intention with which words are used."

*Spence & Howe Construction Company v. Gulf Oil Corporation,* supra at 637. After the intent of the parties is determined, the doctrine of strictissimi juris is applied to prevent the indemnitor's liability from being extended beyond the terms of the agreement. *Mitchell's, Inc. v. Friedman,* supra; *Ohio Oil Company v. Smith,* 365 S.W.2d 621, 627 (Tex.1963).

In support of its position, appellant relies on the case of *Red Ball Motor Freight, Inc. v. Employers Mutual Liability Insurance Company of Wisconsin,* 189 F.2d 374 (5th Cir. 1951), in which the court gave the phrase "arising out of" a broad connotation in construing an automobile liability insurance policy. The words were construed as having " . . . much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from' . . . ." (189 F.2d at 378) However, in *Red Ball Freight* the indemnitor was an insurance company in the business of writing insurance contracts wherein

indemnity was provided for a premium. Such a situation is clearly distinguishable from the problem presented in this case where there exists an agreement in which indemnity is not the principal purpose but only an incidental provision of a contract between parties whose main purpose is something else. *Employers Casualty Company v. Howard P. Foley Company, Inc.,* 158 F.2d 363, 364 (5th Cir. 1946) (applying Texas law).

Appellant's reliance on *Amarillo Lodge No. 731, A. F. & A. M. v. City of Amarillo,* 473 S.W.2d 264 (Tex.Civ.App.—Amarillo 1971, rev'd on other gr'ds, 488 S.W.2d 69 (Tex.1972), is also misplaced. Appellant cites that case as supporting an expansive interpretation of the phrase "incident to." The Court of Civil Appeals in *Amarillo Lodge* was construing "incident to" in the context of an ad valorem tax case and the interpretation employed therein is not controlling in the circumstances and context of the instant case. It is our duty to apply the rules of construction as outlined in *Spence & Howe* and determine whether the accident in question comes within the scope of the indemnity agreement made between Sun and Renshaw.

When dealing with the application of an indemnity agreement, the fact that an employee was injured while "at work" does not necessarily answer the question whether his injury arose out of performance of that work, or resulted from or in connection with the work contemplated under the indemnity provision. *Brown & Root, Inc. v. Service Painting Company of Beaumont, Inc.,* 437 S.W.2d 630 (Tex.Civ.App.—Beaumont 1969, ref'd); *Westinghouse Electric Corporation v. Childs-Bellows,* 352 S.W.2d 806 (Tex.Civ.App.—Fort Worth 1961, ref'd); *Martin Wright Electric Company v. W. R. Grimshaw Company,* 419 F.2d 1381 (5th Cir. 1969), cert. denied, 397 U.S. 1022, 90 S.Ct. 1263, 25 L.Ed.2d 532 (1970) (applying Texas law). The fact that the injured employee or his dependents have received workmen's compensation benefits is, also, not a controlling factor. *Brown & Root, Inc. v. Service Painting Company of Beaumont, Inc.,* su-

pra; *Martin Wright Electric Company v. W. R. Grimshaw Company,* supra; *Employers Casualty Company v. Howard P. Foley Co., Inc.,* supra. The disposition of a case of this nature necessitates a thorough review of all the surrounding facts and circumstances.

After conducting an exhaustive review of relevant Texas jurisprudence, the Fifth Circuit discerned a pattern in the approach taken by the Texas courts in cases of this nature and concluded that:

> " . . . when the accident or injury is caused by the negligence of the indemnitee, the circumstances of the cause of the accident, the negligent acts or omissions, are examined by the courts to determine if they had any connection with, involvement with or relation to the performance of the work of the indemnitor. If they had none, the injuries are not considered as having any 'connection with' the work, 'arising out of' it, or 'resulting from' it under language of contracts having such broad connotation."

*Martin Wright Electric Company v. W. R. Grimshaw Company,* supra at 1385. The propriety of such a scope of inquiry into the circumstances of the accident is clearly set forth in the cases of *Westinghouse Electric Corporation v. Childs-Bellows,* supra, and *Brown & Root, Inc. v. Service Painting Company,* supra.

In *Childs-Bellows,* the subcontractor for installation of elevators agreed to indemnify the general contractor against all loss "growing out of, or incident to or resulting from the performance, or failure to perform the Work or the provisions of this Subcontract." (352 S.W.2d at 807–808) Two employees of the subcontractor were injured while in the course and scope of their employment, in furtherance of the work under the subcontract, when employees of the general contractor negligently dropped objects down the elevator shaft upon them. The Court of Civil Appeals held that the general contractor was not entitled to indemnity and said:

> "In the instant case, however, in view of the provisions of the indemnity agree-

ment, it is clear that indemnity was intended to extend only to injuries to persons growing out of or incident to or resulting from performance, or the failure to perform, on the part of Westinghouse [subcontractor], the work of installing the elevators. The agreement does not show an intent by the parties to indemnify Childs-Bellows [general contractor] for injuries to persons resulting from work which was under the exclusive jurisdiction of Childs-Bellows as general contractor. The injuries sustained by the Westinghouse employees were not injuries growing out of any work undertaken by Westinghouse but, according to the stipulations, were due solely to negligence of employees of the general contractor, Childs-Bellows, in work which in so far as the stipulations show had no connection whatever with the installation of the elevators, and work with which Westinghouse had no connection." (352 S.W.2d at 808)

The Texas Supreme Court has recognized *Childs-Bellows* as standing for the proposition that the particular injuries sustained by the indemnitor's employees were not covered by the indemnity provision agreed upon by the parties. *Spence & Howe Construction Company v. Gulf Oil Corporation,* supra at 635–636. The Supreme Court has noted that the rationale of *Childs-Bellows* was that the actions resulting in injury, the dropping of objects upon the subcontractor-indemnitor's employees, "was in no way related to the installation of elevators called for by the Westinghouse contract." *Spence & Howe Construction Company v. Gulf Oil Corp.,* supra at 637; *Ohio Oil Company v. Smith,* supra at 626.

In *Brown & Root,* Service Painting Company entered into a subcontract for painting work with the general contractor, Brown & Root, Inc. The subcontract provided that Service Painting Company indemnify Brown & Root against all claims which may be "caused or alleged to have been caused in whole or in part by, or which may occur or be alleged to have occurred in connection with, the performance of the Sublet Work." (437 S.W.2d at 631) Brown & Root was the general contractor for installation of a conveyor system requiring an automatic handling system for large rolls of paper, which included a bumper device that could be raised or lowered below floor level. A leak occurred in the air line controlling the bumper thereby making it necessary to bleed the air from the line. An employee of Service Painting was in the pit underneath the bumper when a Brown & Root pipefitter negligently bled the line and lowered the bumper. The indemnitor's employee was crushed to death while actually engaged in painting work called for by the subcontract. The raising and lowering of the bumper was totally unrelated to the painting activities. After settling the claim against it, Brown & Root sought indemnity from Service Painting under the provisions of the subcontract.

The trial court denied indemnity and Brown & Root appealed. The Court of Civil Appeals said of Brown & Root's argument:

"Appellant's argument is deceptively simple and, at first blush, seems unanswerable. It proceeds along these lines: Carpenter [subcontractor's employee] was killed at a time when he was painting under the bumper which descended upon him. Not only was he acting in the scope of his employment, but also it was the very work which he was doing which placed him in the position of danger wherein he met his death. Thus, in painting the area beneath the bumper, Carpenter was clearly effectuating the object of the sub-contract. It then follows, according to appellant, that 'he met his death in connection with work which he was performing under the sub-contract' and appellants are entitled to indemnity." (437 S.W.2d at 632)

After a thorough analysis of *Childs-Bellows, Spence & Howe,* and *Alamo Lumber Company v. Warren Petroleum Corporation,* 316 F.2d 287 (5th Cir. 1963), a case relied upon by Sun in the instant case, the court rejected Brown & Root's argument. In affirming the trial court's decision to deny indemnity to Brown & Root, the Court of Civil Appeals concluded:

"Carpenter's death did not grow out of any work undertaken by Service Painting Company; but, according to the undisputed evidence and the findings of the court, was due solely to negligence of employees of Brown & Root performing work under the general contract. This work had no connection with the painting and was work with which Service Painting Company had no connection." (437 S.W.2d at 634)

Sun's reliance on *Alamo Lumber Company v. Warren Petroleum Corporation*, supra, and *Richmond v. Amoco Production Company*, 390 F.Supp. 673 (E.D.Tex.1975), aff'd, 532 F.2d 1374 (5th Cir. 1976), is unavailing. Both are cases wherein the indemnitor was found to be liable to the indemnitee but a close reading convinces us that neither is inconsistent with *Brown & Root* and *Childs-Bellows.*

In *Alamo Lumber*, Alamo contracted with Warren to build cabinets in a chemical laboratory on Warren's plant site. Alamo agreed to indemnify Warren from any claim "which arises out of or in connection with the activities of Contractor [Alamo], Contractor's servants, agents and employees." (316 F.2d at 288) During the course of Alamo's construction work, it was found to be necessary to remove a sink and the sewage pipe was disconnected but left unplugged by Alamo's employees. Through the negligence of Warren, waste gas from a natural gasoline plant backed up in the sewage line and was discharged into the lab while two of Alamo's employees were working there. Both men were overcome by the poisonous gas.

Alamo sought to rely on *Childs-Bellows* in resisting Warren's claims for indemnity, but the Fifth Circuit noted that the cases were not comparable and distinguished *Childs-Bellows* from the case then before the court. The Fifth Circuit concluded that the claim in *Childs-Bellows* did not come within the scope of the indemnity agreement since the injury was not sustained "in connection with" the work required by the contract. (316 F.2d at 289–290) The court in *Brown & Root* discussed *Alamo Lumber*

and also distinguished it from the problem presently before them. They reasoned that in *Alamo Lumber* it was conclusively shown that:

"[T]he work of installing the cabinets under the sub-contract—the subject of the sub-contract—necessitated the removal of pipes leading to a sink, and the gas backed up in the open pipe, injuring the men. It was the act of Alamo's employees which created the very condition causing their injury. *No such situation exists here.*" [Emphasis added.] (437 S.W.2d at 634)

*Richmond v. Amoco Production Company*, supra, is equally unavailing and is not apposite to the situation existing in the present case. The court in *Richmond* found the factual situation to be remarkably similar to that found in *Alamo Lumber* and upheld the indemnitor's liability as a result. (390 F.Supp. at 677)

The purpose of the indemnity agreement between Sun and Renshaw was to require Renshaw to carry on the performance of this contract, specifically certain well servicing work, so that there would be no responsibility on the part of Sun for injuries or damages "arising out of, incident to or in connection with" the performance of that work. According to the stipulations of facts submitted by Sun and Renshaw,

"The specific well servicing work that Renshaw had contracted to perform for Sun Oil at M.S. Shamburger Well 2–1 was completed by Renshaw, to the satisfaction of Sun Oil, prior to the accident, and no further work remained to be done at the well site."

Any liability on the part of Sun towards plaintiff, David Durbin, was due to the negligent maintenance of the access road. Such road maintenance was the responsibility of Sun and was unrelated to and had no connection with the well servicing work, the subject of this contract.

This case, in our opinion, is therefore ruled by *Childs-Bellows* and *Brown & Root*, and so holding, appellant's points are overruled. The judgment of the trial court is in all things affirmed.