## LIBERTY STEEL COMPANY, Appellant,

v.

## GUARDIAN TITLE COMPANY OF HOUSTON, INC., Appellee.

### No. 05–85–00646–CV.

Court of Appeals of Texas, Dallas.

May 22, 1986.

Bernard Wm. Fischman, Lackshin & Nathan, Houston, for appellant.

Charles E. Fitch, Ben A. Baring, Jr., DeLange, Hudspeth, Pitman & Katz, Houston, for appellee.

Before AKIN, HOWELL and HOLLINGSWORTH, JJ.

AKIN, Justice.

Liberty Steel Company appeals from a judgment awarding Guardian Title Company of Houston, Inc. a money judgment for Liberty's alleged breach of a written indemnity agreement. Guardian obtained an award of $15,000 plus interest under a certain contract of indemnity, plus an award of $15,552.50 in attorney's fees, with an additional sum for attorney's fees in the event of an appeal. Liberty raises sixteen points of error, asserting in pertinent part: (1) that Guardian breached the indemnity agreement by failing to obtain Liberty's consent to a certain settlement with a third

party; (2) that Liberty did not waive its right of approval as a condition precedent to its obligations under the indemnity agreement; and (3) that the award of attorney's fees is excessive. We agree that Liberty had the right, as a condition precedent to its liability under the indemnity agreement, to approve any settlements negotiated by Guardian. We also agree that Liberty did not waive that right and that Guardian failed to perform under that condition of the indemnity agreement. Consequently, we reverse the judgment of the trial court and render judgment in favor of Liberty that Guardian recover nothing.

Liberty was a supplier of raw steel to fabricating companies, among them Ranch King Enterprises, Inc. In 1976, Liberty was the largest single creditor of Ranch King and, apparently believing that the debts were in danger of default, sought to protect its interests by acquiring control of Ranch King through acquisition of the stock of Charles Dillon. Another creditor of Ranch King, Kelsey-Hayes Company, obtained a judgment against Ranch King and Dillon in 1977 for about $20,000. An abstract of this judgment was filed in the judgment records of Austin County, Texas on June 9, 1977.

In May of 1977, Dillon and his wife put their residence up for sale and entered into an earnest money contract with the Landrums. Guardian was contacted to provide the policy of title insurance covering the sale of the residence. Between May 14, 1977, and June 9, 1977, the Dillons removed all of their possessions from the residence, thus raising an issue as to whether it was a homestead at the time of the filing of the abstract of judgment by Kelsey-Hayes. At the closing on the residence, on July 11, 1977, Guardian delivered the title policy to the Landrums, insuring clear title without an exception for the possible claims of Kelsey-Hayes under the abstract of judgment. At this closing, $23,200 was withheld from the funds to be paid the Dillons and was held in escrow, pending resolution of the claims of Kelsey-Hayes under the abstract of judgment.

Later in July, Dillon, Liberty, and others met to discuss the acquisition by Liberty of all remaining issued and outstanding stock in Ranch King, some of which was apparently still owned by Dillon. Guardian contended, and the trial court found, that as part of the consideration for the transfer of Ranch King stock from Dillon to Liberty, Liberty agreed to indemnify Guardian for claims under the title policy up to $23,200 in return for Guardian's release of the escrowed funds to the Dillons.

On August 10, 1977, Liberty sent a letter, the indemnity agreement, to Guardian under which Liberty agreed to reimburse Guardian, up to the sum of $23,200, for sums paid by Guardian in payment of claims made under the title policy issued to the Landrums. This obligation was "subject to the conditions" stated therein and was to be secured by an irrevocable letter of credit. In return Guardian agreed to release the escrowed funds to the Dillons. The indemnity agreement went on to list five "conditions" of Liberty's obligations thereunder, the fourth of which was that:

no payment, compromise, settlement, accord or satisfaction shall be made without the prior written approval of Liberty Steel Company....

Under the indemnity agreement, any claim by Guardian had to be presented within one year of the date of the letter. The indemnity agreement requested that Guardian indicate its acceptance by signing the agreement and returning two signed copies to Liberty. There was no evidence that Guardian did sign and return the agreement as requested, but Guardian did release the escrowed funds to the Dillons.

On August 9, 1978, Kelsey-Hayes sued the Dillons, the Landrums, Guardian, Liberty, Ranch King and others to foreclose on its abstract of judgment. Citation was served upon Guardian on August 10th. On that same date, an attorney for Guardian presented a "demand" letter to Liberty, requesting that Liberty "honor the terms" of its indemnity agreement dated August 10, 1977. Subsequently, Liberty did not conduct the defense of the suit, and no

proposed settlement offer was ever presented to Liberty for its approval. Instead, Guardian entered into a settlement with Kelsey-Hayes for the sum of $15,000 on December 1, 1983. After the settlement, but more than thirty days before the litigation of this case, Guardian notified Liberty that it had settled and that it sought recovery or reimbursement from Liberty. Liberty refused to pay, and this litigation followed.

The trial court found, as a conclusion of law, that all conditions precedent to the accrual of the obligations of Liberty under the indemnity agreement had occurred or were performed. The court further found that Liberty waived compliance with and is estopped from asserting noncompliance with the express terms of the indemnity agreement. We disagree with both of these conclusions of the trial court.

Initially, we note that there was no evidence that Guardian ever submitted the proposed settlement to Liberty for its approval, as required by condition four of the indemnity agreement. Neither is there evidence that Guardian made demand upon Liberty that it assume defense of the case—sometimes referred to as "tender of the defense." The "demand" letter from Guardian to Liberty demanded only that Liberty "honor the terms" of its indemnity agreement—which had no requirement that Liberty defend the case on behalf of Guardian. Under the indemnity agreement, Liberty had the *right* to conduct the defense, but not the obligation to so do. The testimony of Guardian's attorney was only that Liberty "never offered" to defend the case or pay the attorney's fees on behalf of Guardian. Accordingly, we hold that Liberty's failure to "offer" is neither a demand by Guardian nor a refusal by Liberty to assume the responsibility for defending. Further, there was no evidence that Liberty waived its right to insist upon compliance with the express contractual condition that it had the right to approve any settlements.

Nevertheless, the trial court apparently relied on case law to hold that, because Liberty did not take over the defense of Guardian's case, it had waived its rights under the written indemnity agreement to prior approval of the settlement. In this respect, the trial court has misconstrued the law as well as this contract.

■ A contract for indemnity is read as any other contract to ascertain the intent of the parties. *Ohio Oil Co. v. Smith*, 365 S.W.2d 621, 627 (Tex.1963); *Spence & Howe Construction Co. v. Gulf Oil Corporation*, 365 S.W.2d 631, 637 (Tex.1963); *Mitchells', Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775, 777–78 (1957); *Sun Oil Co. v. Renshaw Well Service, Inc.*, 571 S.W.2d 64, 68 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). In reading contracts, we seek the intent of the parties from the language used, considering all of the language used in the contract. *Spence & Howe*, 365 S.W.2d at 637. When a contract is unambiguous, we must interpret it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Once the intent of the parties is ascertained, the doctrine of *strictissimi juris* is applied to prevent the indemnitor's liability from being extended beyond the terms of the agreement. *Mitchells' Inc.*, 303 S.W.2d at 777–78; *Sun Oil*, 571 S.W.2d at 68.

In reading this contract, it is clear that, as a condition precedent to Liberty's obligation to reimburse Guardian, Liberty was given the right to approve any settlement before it was entered into. Furthermore, Liberty had the right, but not the obligation, to defend the claims against Guardian. We are not faced with a situation where Liberty was presented with a settlement and refused to either accept it or defend the case. In such a situation we might agree that Liberty had renounced all of its obligations under the indemnity agreement, thereby giving rise to the equitable right of settlement upon which Guardian now relies. But Liberty was never given such a choice, and never repudiated its obligations under the indemnity agreement; its rights and obligations are therefore still governed by the terms of the indemnity agreement, not by general prin-

ciples of equity. We cannot extend Liberty's obligations beyond the intent of the parties as expressed in the language of the indemnity agreement.

Nevertheless, Guardian relies upon *Gulf, Colorado & Santa Fe Railway Co., v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 495–97 (1958), to support its contention that, because Liberty "denied liability" under the indemnity agreement, Guardian could ignore the express terms of that agreement, settle without Liberty's approval, and collect upon a showing that the settlement was reasonable, prudent, and made in good faith. Specifically, Guardian relies on language in *McBride* which rejected McBride's contention that, "under the terms of the indemnity provision of the contract, Santa Fe had no right, without the consent of McBride, to make the settlement ... and therefore Santa Fe cannot recover." We note, however, that in that case the contract was a lease agreement which contained, in pertinent part, only the following indemnity provision, whereby McBride agreed

> to release and discharge railway company from all liability because of injury to or death of persons whomsoever ... and to promptly repay any sum or sums which railway company must pay or be compelled to pay....

*Id.* 322 S.W.2d at p. 495. Unlike the agreement here, there was no language specifically concerning the indemnitor's right to approve a settlement, nor its right/obligation to assume defense of the case. Furthermore, in *McBride,* the indemnitor had been "called upon to take over satisfaction" of the claim, had refused to so do, and had denied any liability whatsoever on the claim. *Id.* 322 S.W.2d at p. 497. No such evidence exists in this case. Neither did Guardian have the right under this indemnity agreement to require Liberty to take over "satisfaction of the claim," at least not prior to requesting Liberty's approval of the proposed settlement.

We have reviewed the cases cited by Guardian for its position that, regardless of the language of the indemnity agreement,

Liberty had to initially assume defense of the claim or waive its right to approve settlements, and find none of them persuasive. As in *McBride,* they are based not on specific contractual provisions, such as we have in this case, but upon general principles of equity as applied to indemnity agreements. *See Chicago, R.I. & P.R. Co. v. Dobry Flour Mills, Inc.,* 211 F.2d 785 (10th Cir.1954); *Thermopolis Northwest Electric Co. v. Ireland,* 119 F.2d 409 (10th Cir.1941).

Consequently we hold that the intent of the parties as expressed in the indemnity agreement was that Liberty was not required to initially assume defense of claims against Guardian, although it had the right to do so. Further, Liberty had the right to approve any settlement, which Liberty was never given the opportunity so to do. Finally, we hold that these clear contractual provisions control the rights of the parties in this case, rather than general rules of equity. Hence, Liberty has established its right to judgment as a matter of law. Accordingly, we reverse the judgment of the trial court and render judgment for Liberty that Guardian recover nothing by its cause of action.

Reversed and rendered.