SPAWGLASS, INC. and Spawglass Construction Corporation, Appellants

v.

E.T. SERVICES, INC., Appellee.

No. 09–03–596–CV.

Court of Appeals of Texas, Beaumont.

Aug. 26, 2004.

Gregory M. Cokinos and Robert A. Plessala, Cokinos, Bosien & Young, Houston, for appellants.

Peter J. Bambace, Holm, Bambace & Macabre, LLP, Houston, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

PER CURIAM.

This case involves the application of the "express negligence rule" to an indemnity contract between a contractor and a subcontractor. The contract provided "Subcontractor agrees to ... indemnify Contractor ... against and for all liability ... and damages which Contractor may ... become liable for by reason of any ... injuries ... to ... the workmen of either party ... in any matter arising out of or resulting from Subcontractor's performance ... hereunder, ... including, but not limited to, any negligent act or omission ... of Contractor...." One of the subcontractor's workers sued the contractor for negligence, and the contractor filed a third-party claim against the subcontractor. The trial court granted summary judgment for the subcontractor. We hold that the intent expressly stated within the four corners of the contract exculpates the contractor from the consequences of its own negligence that resulted in injury to the subcontractor's worker. We also hold that, because the worker was injured while performing work for the subcontractor, the claim arises out of the performance of the contract. We further hold that the contractor is entitled to indemnity from the subcontractor. Accordingly, we reverse the summary judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court reviews the summary judgment evidence presented by both sides and determines all questions presented. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex.1997). If the issue raised is based upon undisputed and unambiguous facts, we may determine the question presented as a matter of law. *Gramercy Ins. Co. v. MRD Invs., Inc.,* 47 S.W.3d 721, 724 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). If resolution of the issues rests on disputed facts, however, we reverse and remand for further proceedings. *Coker v. Coker,* 650 S.W.2d 391, 394–95 (Tex.1983).

■ Under the terms of the contract between contractor SpawGlass Construction Corporation and subcontractor E.T. Services, Inc. ("ETS"), ETS agreed to perform structural steel erection for SpawGlass Construction Corporation at the Caney Creek High School. Brian Sanders, an ETS employee working as a connector welder, avers that he was rolling up an oxygen hose when he was struck by a three by six foot piece of plywood. The appellee's motion for summary judgment

alleges that a gust of wind blew the plywood off of the roof during a sudden storm. Sanders sued SpawGlass Construction Corporation and SpawGlass, Inc. (collectively "SpawGlass")[1] for negligence, and SpawGlass sought indemnity from ETS. ETS and SpawGlass filed cross-motions for summary judgment. The trial court denied the SpawGlass motion, granted the ETS motion, and severed the third-party claim from the main suit. On appeal, SpawGlass contends the contract clearly and unambiguously requires ETS to indemnify Spawglass for claims of injury to ETS's workers attributable to Spaw-Glass's negligence. ETS, on the other hand, contends the indemnity provision is ambiguous and that the indemnity applies only to injuries resulting from ETS's performance.

■■■ The express negligence rule requires that the intent of the party seeking indemnity from the consequences of that party's own future negligence must be expressed in unambiguous terms within the four corners of the contract. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987). The indemnity clause in this case derives from a clause the Supreme Court held was enforceable under the express negligence doctrine. *See Atlantic Richfield Co. v. Petroleum Personnel, Inc.*, 768 S.W.2d 724, 726 (Tex.1989).[2] To distinguish its agreement to indemnify Spaw-Glass from the *Atlantic Richfield* indemnity, ETS relies on the additional language contained within the contract's responsibility-shifting provision. To the *Atlantic Richfield* language "including, but not limited to, any negligent act or omission" of the indemnified party, the contract in this case added words "or claim involving strict liability or negligence per se of" Spaw-Glass. The addition of this phrase, the appellee contends, makes the indemnity clause ambiguous. We disagree. The language contained in a contract is accorded its plain grammatical meaning unless to do so would defeat the parties' intent. *See DeWitt County Elec. Co-op. v. Parks*, 1 S.W.3d 96, 101 (Tex.1999). The drafter did not separate "any negligent act or omission or claim involving strict liability" from "or negligence per se of Contractor," and the subject phrase "any negligent act or omission" makes sense only in conjunction with the prepositional phrase "of Contractor or Owner." We conclude that the indemnity clause in this contract satisfies the express negligence rule.

■■■ The appellee argues that, "regardless of whether the provision meets the express negligence test, indemnity does not apply because the circumstances of the incident did not trigger the indemnity provision." ETS contends that indemnity may only be triggered if the incident arose out of its performance, not its mere presence on the site. ETS relies on two cases that pre-date *Ethyl* and the adoption of the express negligence test. *See Sun Oil Co. v. Renshaw Well Serv., Inc.*, 571 S.W.2d 64 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.), and *Westinghouse Elec. Corp. v. Childs–Bellows*, 352 S.W.2d 806 (Tex.Civ.App.-Fort Worth 1961, writ ref'd). The contracts in those cases included some language similar to that found in the

1. We decide this appeal as though the two parties were a single entity because neither the briefs nor the documents filed in the appellate record distinguish between these two parties.

2. The appendix to this opinion illustrates the similarities and differences between the

SpawGlass contract and the *Atlantic Richfield* contract through a side-by-side comparison of the two indemnity paragraphs. The *Atlantic Richfield* contract appears in the left column; the corresponding parts of the ETS/Spaw-Glass agreement appear in the right column.

ETS/SpawGlass contract, but lacked the express inclusion of negligent acts or omissions of SpawGlass found within the indemnity undertaken by ETS.[3]

In this case, the worker was allegedly injured in the performance of ETS's work under the SpawGlass contract. The contract expressly provided that ETS would indemnify SpawGlass against liability for SpawGlass's negligent act that injured ETS's worker. Although the appellee contends that the injury arose from SpawGlass's performance completely unrelated to the work ETS and its worker were hired to perform, the contractor, the subcontractor, and the worker were all engaged in the construction of a high school auditorium.

In its motion for summary judgment, ETS contended that Sanders's injury did not arise out of ETS's performance of its contractual duty to erect steel because Sanders "was standing under cover when a storm began." The factual basis for this allegation is not established by the summary judgment record, which includes discovery responses in which Sanders maintains that he was rolling up oxygen hose when struck by the sheet of plywood. Therefore, the trial court could not have granted summary judgment for ETS on that ground.

The contract between the parties expressly stated that ETS would indemnify SpawGlass from the consequences Spaw-Glass's own negligence that resulted in injury to ETS's worker. The claim assert-

**3.** The contract in *Sun Oil,* 571 S.W.2d at 66, stated:

INDEMNITY: Contractor (Renshaw) agrees to protect, defend, indemnify and hold Sun and the employees of Sun free and harmless from and against any and all claims, demands and causes of action of every kind and character (except underground damage) arising out of, incident to, or in connection with this agreement or performance of work or services hereunder or breach of the terms hereof, regardless of whether the liability therefor is based upon some alleged act or omission of Sun or of Contractor or of some third or other party, and including without limitation by enumeration all taxes, claims, debts, fines, penalties, forfeitures, patent infringements, loss of use, death, injury and damages to all persons and property, together with the amount of judgments, penalties, interest, court costs, legal and other fees and expenses in connection therewith. With respect to liability based upon some alleged act or omission of Sun or some such third or other party, not an agent or subcontractor of Contractor, this indemnity shall be limited to the kinds and amounts of insurance Contractor agrees to carry under this Contract and Services Agreement, or such greater amounts as Contractor does in fact carry.

The contract in *Westinghouse Electric,* 352 S.W.2d at 807–08, stated:

Subcontractor agrees to perform the Work in a good and workmanlike manner and in accordance with the provisions of the General Contract, and with the provisions of this Subcontract and in accordance with all safety rules and regulations set forth in the General Contract, or issued by Contractor, and in accordance with any and all laws, rules or regulations issued by any governmental authority having the authority to control the manner or method of carrying out the Work. Subcontractor further agrees that if the property of any person, firm or corporation, including that of Contractor, is lost, damaged, or destroyed while on the job site and such loss, damage or destruction is caused by, results from, or arises out of, the doing, or the method or manner of performance of the Work, or, is due to or results from, or arises out of, the failure of Subcontractor to do, or Subcontractor's omission to do, anything in connection with the Work, or required by this Subcontract, Subcontractor shall indemnify and save harmless Contractor from any and all such loss, damage or destruction. Subcontractor further agrees to and shall indemnify and save harmless Contractor from and against any and all loss, claim, demand, and suit for damage, including death and personal injury, growing out of, or incident to or resulting from the performance, or failure to perform the Work or the provisions of this Subcontract.

ed by Brian Sanders arises out of the performance of ETS's contract with Spaw-Glass. Therefore, the trial court erred in dismissing the appellants' third-party claim against the appellee. We reverse the summary judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

## APPENDIX

Indemnity for Personal Injury and Property Damage

INDEMNITY. To the fullest extent permitted by law,

| | |
|---|---|
| CONTRACTOR [PPI] agrees to hold harmless and unconditionally indemnify COMPANY [ARCO] | Subcontractor agrees to defend, hold harmless and unconditionally indemnify Contractor and Owner, their officers, directors, shareholders, employees, agents, Contractor's surety and all parties whom Contractor is required to indemnify pursuant to the terms of the Contract Documents, |
| against and for all liability, cost, expenses, claims and damages | against and for all liability, costs, expenses, claims, liens, citations, penalties, fines, attorney's fees, losses, and damages |
| which [ARCO] may at any time suffer or sustain or become liable for by reason of any accidents, damages or injuries either to the persons or property or both, of [PPI], or of the workmen of either party, or of any other parties, or to the property of [ARCO], | which Contractor may at any time suffer or sustain or become liable for by reason of any accidents, damages or injuries either to the persons or property or both of Subcontractor, or the workmen of either party, or of any other parties, or to the property of Contractor, |
| in any matter arising from the work performed hereunder, | in any matter arising out of or resulting from Subcontractor's performance or failure to perform hereunder, or failure or defects of materials or goods supplied by or on behalf of Subcontractor, |
| including but not limited to any negligent act or omission of [ARCO], its officers, agents or employees . . . . (emphasis added) | including, but not limited to, any negligent act or omission or claim involving strict liability or negligence per se of Contractor or Owner, their officers, directors, shareholders, employees, agents, Contractor's surety and all parties whom Contractor is required to indemnify pursuant to the terms of the Contract Documents. |
| | The coverage of any insurance policy required herein or actually carried by Subcontractor shall not limit the extent of Subcontractor's liability under the foregoing indemnity. |